UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                :

**JHONDER RAFAEL ROBLES ESCALONA**,

                       Petitioner,

           – against –

  **WARDEN, MDC BROOKLYN**,

                     Respondents.

------------------------------------------------------------------ X

          :  **MEMORANDUM DECISION
AND ORDER**

          26-CV-3920 (AMD)

**ANN M. DONNELLY**, United States District Judge:

On May 19, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained the *pro se* petitioner. (ECF No. 6-1 ¶ 6.) On May 26, 2026, the petitioner was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, where he is currently detained. (*Id.* ¶ 8.) The petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court granted the petition in a July 9, 2026 order. As part of the order, the Court directed the government to release the petitioner from custody immediately "without any release conditions," to return to the petitioner any and all funds or property seized from him when he was arrested, and to submit a letter to the Court certifying compliance with its Order within 48 hours. (*ECF Order dated July 9, 2026.*)[1] On July 10, 2026, the government certified that it had complied with the order and that it released the petitioner "well within the 24 hour deadline." (ECF No. 8.) In this opinion, the Court describes the reasons for granting the petition.

---

[1] The Court also ordered the government to serve the petitioner with a copy of the Court's order. The government explained that ICE did not serve a copy of the July 9 Order on the petitioner "due to an oversight," but that the government sent a copy of the order to the petitioner's address via UPS courier and FedEx delivery. (*See* ECF No. 8.)

## BACKGROUND[2]

The petitioner, an asylum seeker from Venezuela, entered the United States near El Paso, Texas on September 8, 2022. (ECF No. 6-1 ¶¶ 3, 10.) He was arrested by a Customs and Border Protection ("CBP") agent, and released on parole the next day. (*Id.*) CBP issued the petitioner a letter directing him to report to ICE within 60 days for processing; when he did not appear, the government did not renew his parole. (*Id.* ¶¶ 3–5.)

On May 19, 2026, the petitioner reported to a New York ICE office in for a scheduled appointment. (*Id.* ¶ 6; ECF No. 1 at 3.) ICE arrested him, and detained him at the Delaney Hall Detention Facility in Newark, New Jersey, pursuant to an arrest warrant and I-286, Notice of Custody Determination form that cited "section 236 of the Immigration and Naturalization Act," or 8 U.S.C. § 1226. (ECF No. 6-1 ¶ 6.) He was not, however, afforded a bail hearing. (ECF No. 1 at 4.) The government asserts, without further explanation, that "[a]fter completing Form I-286, ICE determined that petitioner was detained pursuant to 8 U.S.C. § 1225(b)(2)(A), so the I-286 was done in error." (ECF No. 6-1 ¶ 6.) The government began removal proceedings against the petitioner the day he was arrested; it issued him a Notice to Appear and charged him as removable. (*Id.* ¶ 7.) The government transferred the petitioner to the MDC on May 26, 2026. (*Id.* ¶ 8.) On June 2, 2026, the petitioner had a hearing before an immigration judge at which he was represented by counsel. (*Id.* ¶ 9.) He conceded that he was removable, but filed an

---

[2] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits. *See Hyppolite v. Noem*, 808 F. Supp. 3d 474, 479 n.1 (E.D.N.Y. 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 402 n.1 (S.D.N.Y. 2025).

Having reviewed all the submissions, the Court finds that the petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. *See* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require"); *see also Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. 2025).

2

application for relief with the immigration court. (*Id.*)  On June 16, 2026, an immigration judge "sustained the sole charge of removability" and set a merits hearing on the petitioner's asylum application for August 24, 2026.  (*Id.* ¶ 11.)

The petitioner filed this petition on June 30, 2026.  (ECF No. 1.)  On the same day, the Court ordered the government to show cause why the petition should not be granted, and to explain in its submission the statutory authority for detaining the petitioner and, if applicable, whether the petition is controlled by the Second Circuit's opinion in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026).  (*ECF Order dated June 30, 2026.*)  The government responded on July 6, 2026.  (ECF No. 6.)

The government maintains that it is detaining the petitioner pursuant to Section 1225(b)(2)(A) of the Immigration and Nationality Act ("INA").  (*Id.* at 2–4.)  To date, the petitioner has not been given a bond hearing.  (ECF No. 1 at 2.)  The government does not claim that the petitioner is a flight risk or a danger to the community.  He has no criminal history in the United States (ECF No. 6-6 at 4), and there is no final order of removal (*Id.* at 3).  The government has issued him employment authorization.  (*See id.* at 9.)  He is working, has filed federal tax returns, and lives with his partner who is pregnant with their child.  (*See id.* at 11, 16).

**LEGAL STANDARD**

Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)).  "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

In seeking a writ of habeas corpus, the petitioner alleges that the government violated his due process rights under the Fifth Amendment by detaining him without an individualized bond hearing to determine whether his continued detention is necessary. The government responds that the petitioner is not entitled to a hearing because his detention is mandatory under 8 U.S.C. § 1225.

### I.    Basis for Detention

Two sections of the INA govern immigration detention: 8 U.S.C. § 1225, which provides that "an alien seeking admission [who] is not clearly and beyond a doubt entitled to be admitted . . . shall be detained;" and 8 U.S.C. § 1226, which "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," including noncitizens "who were inadmissible at the time of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018).

If Section 1225(b)(2) applies to the petitioner's detention, the petitioner is subject to mandatory detention pending removal proceedings under Section 1229. *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 283 (E.D.N.Y. 2025), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026). But if Section 1226 applies, detention pending removal proceedings is discretionary. *Id.* A noncitizen detained pursuant to Section 1226 may request a bond hearing before an immigration judge, 8 C.F.R. §§ 1236.1(c)(8), (d)(1), at which the immigration judge must determine whether detention is justified because the noncitizen is either a danger to the community or a flight risk. *J.C.G. v. Genalo*, No. 24-CV-08755, 2025 WL 88831, at *7 (S.D.N.Y. Jan. 14, 2025) (collecting cases).

The Court is guided by Judge Joseph Bianco's "thoughtful and learned opinion" in *Barbosa da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026) (Cabranes, J., concurring), in

4

which the Second Circuit rejected the government's claim that a noncitizen like Cunha — an asylum seeker with work authorization who entered the United States without inspection and had lived and worked in the country for over twenty years — was subject to mandatory detention under Section 1225(b)(2)(A). *Id.* at 69. The Second Circuit joined "the overwhelming majority of federal judges across the Nation" and concluded that "the government's novel interpretation of the immigration statutes defies their plain text," and that Section 1226(a), not Section 1225(b)(2)(A) "plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Id.* at 69, 73. This result, the court held, was not only "dictated by the plain text" of both provisions, but was consistent with the Supreme Court's "established understanding" of them and with "Executive Branch practice over thirty years and across five Presidential administrations." *Id.* at 69. Separately, the court rejected the government's "newfound interpretation of Section 1225(b)(2)(A)" based on the court's "obligation to construe these statutes in a manner that would avoid the serious constitutional questions attendant to what would be the broadest mass-detention-without-bond mandate in our Nation's history for millions of noncitizens." *Id.* at 69–70. The Second Circuit's holding "allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a) while their removal proceedings are pending." *Id.* at 70.

In the face of this sweeping rejection of its interpretation of the immigration statutes, the government nevertheless maintains that this petitioner — an asylum seeker with work authorization who is "already present in the United States," and whom the government does not claim to be dangerous or a flight risk — must be detained under Section 1225(b)(2)(A). (*See*

5

ECF No. 6.)  According to the government, the fact that the petitioner was arrested at the border in 2022 means that Section 1225(b)(2)(A) governs because, in the government's view, *Cunha* "expressly preserved Section 1225(b)(2)(A)'s application to foreign nationals who — like Petitioner — were apprehended at the border and processed under Section 1225(b)." (ECF No. 6 at 2.)  But the government ignores what happened after the petitioner was stopped at the border — he was released into the country, where he has been living for about four years.  (*See id.* at 1.) He is thus no longer seeking admission; he is here.  "When the statute says, 'alien seeking admission,' it therefore refers to a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is."  *Cunha*, 175 F.4th at 77; *see also Jennings*, 583 U.S. at 289 (Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings.").

Equally unpersuasive is the government's argument that the petitioner's status "revert[ed] to what his status was before he was paroled," because his parole expired.  (ECF No. 6 at 3.)[3] Judge Hector Gonzalez rejected the same argument in *O.F.B. v. Maldonado*, 810 F. Supp. 3d 394, 402 (E.D.N.Y. 2025):

> This argument, a tactic that other courts have referred to as the "entry fiction," *see, e.g.*, *Sarmiento Guerrero*, 2025 WL 3214787, at *6; *J.G.O. v. Francis*, No. 25-cv-7233, 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025), is not relevant to the statutory analysis because "the entry fiction is a doctrine that dictates what constitutional rights are due to a noncitizen who is physically present in the United States (for example, because of detention or parole) but hasn't been lawfully admitted," *J.G.O.*, 2025 WL 3040142, at *4.  Indeed, "parole status speaks only to whether [the petitioner] has been admitted, not whether he was seeking admission at the time of his detention in [May], as that term is used in Section 1225(b)(2)(A)," and, therefore, the government's "reference to the entry fiction . . . conflates Section 1225(b)(2)(A)'s distinct

---

[3] The Court respectfully disagrees with the reasoning in *Rana v. Genalo*, No. 26-CV-849, 2026 WL 1863815 (S.D.N.Y. June 29, 2026).

requirements that an alien be an applicant for admission, and that he be seeking admission." *Sarmiento Guerrero*, 2025 WL 3214787, at *6.

Somewhat incongruously, the government also describes the petitioner as "a parolee," and asserts that the Second Circuit "recognized" that "status as a parolee bears on the legal analysis" because the Second Circuit cited *Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958), "for the proposition that parolees are constructively at the border." (ECF No. 6 at 3 (citing *Cunha*, 175 F.4th at 74).) Even assuming that the petitioner is a parolee, *Leng May Ma* does not support the government's position. The Supreme Court held that the Leng May Ma's parole did not affect her legal status in the country, *Leng May Ma*, 357 U.S. at 190,[4] and interpreted statutory language that has since been "significantly change[d]," *United States v. Pantin*, 155 F.3d 91, 92 (2d Cir. 1998).

In short, *Cunha* compels the conclusion that the petitioner's detention is "governed by Section 1226(a), not Section 1225(b)(2)(A)," because he was "already present in the United States." *Cunha*, 175 F.4th at 70.

## II.    Denial of Due Process

When a petitioner is detained under Section 1226(a), and "the record demonstrates that the government has made no individualized determination to justify detaining the petitioner," the detention violates Section 1226(a) and the Due Process Clause of the Fifth Amendment. *Ye v. Maldonado*, No. 25-CV-6417, 2025 WL 3521298, at *7–8 (E.D.N.Y. Dec. 8, 2025). The

---

[4] The Supreme Court also observed that "[p]hysical detention of aliens is now the exception, not the rule, and is generally employed only as to security risks or those likely to abscond. Certainly this policy reflects the humane qualities of an enlightened civilization." *Leng May Ma*, 357 U.S. at 190 (1958) (citations omitted).

government has detained the petitioner since May 19, 2026, without due process, in violation of his rights under the Fifth Amendment.

The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("The traditional function of the writ [of habeas corpus] is to secure release from illegal custody;" it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it."). Here, the constitutional violation the petitioner suffered — imprisonment without any individual assessment or opportunity to respond— renders any post-deprivation review by an immigration judge inadequate. The continued detention of the petitioner, in the face of this complete failure of process, entitles him to immediate release.

Furthermore, "'dispos[ing] of the matter as law and justice require,' necessitates both release and narrow injunctive relief guarding against re-detention in violation of this Court's determination that [the petitioner] is not subject to mandatory detention under Section 1225(b)." *Hernandez Lazo v. Noem*, 818 F. Supp. 3d 328, 349 (E.D.N.Y. 2026) (quoting 28 U.S.C. § 2243); *see also Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019) ("As Petitioner's arrest and detention were blatantly unlawful from the start, the only commensurate and appropriate equitable remedy to even partially restore Plaintiff is to immediately release him and enjoin the Government from further similar transgressions" against him.).

**CONCLUSION**

Accordingly, the petition for a writ of habeas corpus under 28 U.S.C. §2241 is granted.

The Court further orders that the petitioner must not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a). The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

<u>   s/Ann M. Donnelly  </u>
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       July 13, 2026